# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:16-cr-73 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| CHRISTOPHER TYE, | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING DEFENDANT'S MOTION
## FOR COMPASSIONATE RELEASE

This criminal case is before the Court on Defendant's *pro se* motion for compassionate release (Doc. 31), which motion subsequently-appointed counsel declined to supplement (Doc. 33),[1] the Government's response in opposition (Doc. 35), defense counsel's reply memorandum (Doc. 36), and the Government's supplemental memorandum in opposition (Doc. 37). The Court also has before it Defendant's medical records and various Bureau of Prisons ("BOP") documentation, all of which Defendant provided in support of his *pro se* motion. (Doc. 31).

## I. BACKGROUND

On July 6, 2016, Defendant Christopher Tye was charged by way of a two-count indictment with: (1) knowingly and intentionally possessing with intent to distribute a mixture and substance containing a detectable amount of heroin; and (2) knowingly and intentionally possessing with intent to distribute a mixture and substance containing a

---

[1] Pursuant to the Southern District of Ohio's Amended General Order 20-21, the Court appointed counsel on behalf of Defendant. (Doc. 32). Appointed counsel subsequently filed a notice declining to supplement Defendant's *pro se* motion. (Doc. 33).

detectable amount of cocaine, both in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). (Doc. 1). As charged, Defendant was subject, on each of the two counts, to a term of up to 20 years imprisonment, supervised release for at least three years up to life, a fine of up to $1 million, and forfeiture. (*Id.*); 21 U.S.C. § 841(b)(1)(C).

On July 10, 2017, Defendant appeared before the Court and entered a plea of guilty to Count 1 of the Indictment, pursuant to a proposed binding Rule 11(c)(1)(C) plea agreement. (Docs. 26, 27). Specifically, as part of the Rule 11(c)(1)(C) plea agreement, the parties proposed a sentence of 108 months imprisonment, followed by at least three years of supervised release. (Min. Entry, Jul. 14, 2017; Docs. 26 and 27). The proposed sentence encompassed a substantial departure from Defendant's anticipated guidelines, which departure the parties incorporated into the recommended sentence. (*See* Doc. 27). In exchange, Defendant, *inter alia*, acknowledged his possession with intent to distribute heroin (Doc. 26) and, additionally, stipulated that "no further reduction of the agreed sentence will occur at or after sentencing." (Doc. 27).

Following a plea colloquy, the Court accepted Defendant's guilty plea, but deferred acceptance of the Rule 11(c)(1)(C) plea agreement until after the Court received and reviewed the Presentence Investigation Report (the "PSR"). (Min. Entry, Jul. 14, 2017).

Defendant's final PSR was completed in September 2017. As stated in the PSR and determined by the Court, Defendant's offense conduct resulted in a Total Offense Level of 29, a Criminal History Category VI, and a Guideline Range of 151 to 188 months of imprisonment. (Doc. 30 at 1). Additionally, based on Defendant's two prior

2

qualifying drug trafficking convictions, *i.e.*, controlled substance offenses, Defendant qualified as a career offender under the Guidelines. (PSR at ¶¶ 29-31).

Defendant's sentencing hearing was held on October 11, 2017. (Min. Entry, Oct. 11, 2017). At sentencing, and upon consideration of the § 3553(a) sentencing factors, the Court accepted the parties' proposed Rule 11(c)(1)(C) plea agreement. (*Id.*) The Court further reduced the 108-month proposed sentence by an additional six months, to account for Defendant's time served in state custody, for which he would otherwise not receive credit. (Doc. 29). Accordingly, Defendant was sentenced to 102 months incarceration, three years of supervised release, forfeiture, and a $100 special assessment.

To date, Defendant has served 53 months of his sentence. According to the BOP's inmate locator, Defendant is currently housed at FCI Morgantown in West Virginia and, accounting for good time credit, Defendant is scheduled for release on December 4, 2023. Find an Inmate, BOP, *available at*: https://www.bop.gov/inmateloc/ (last visited Feb. 18, 2021).[2]

## II. STANDARD OF REVIEW

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment," and "the court may not modify a term of imprisonment once it has been imposed," subject to limited exceptions. 18 U.S.C. § 3582(b), (c); *Dillon v. United States*, 560 U.S. 817, 824 (2010). One such exception permits the Court to reduce a term

---

[2] Based on Defendant's BOP documentation, it would appear Defendant was originally housed in FCI Ashland, but has been transferred to FCI Morgantown since the filing of his motion for compassionate release.

3

of imprisonment, either upon a motion brought by the Bureau of Prisons ("BOP"), or on the defendant's own motion, seeking compassionate release. *Id*. at § 3582(c)(1)(A)(i). A defendant may file a motion for compassionate release with the Court after exhausting the BOP's administrative process, or thirty days after the warden receives the defendant's compassionate release request, whichever is earlier. *Id*. at § 3582(c)(1)(A).

To grant a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must: **first**, find that "extraordinary and compelling reasons warrant [] reduction [of the sentence]"; **second**, find that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission" (specifically, U.S.S.G. § 1B1.13); and **third**, consider the applicable 18 U.S.C. § 3553(a) factors. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1101).

However, the Sixth Circuit recently held that the second step of the Court's three-step § 3582(c)(1)(A) inquiry—*i.e.*, finding that the reduction is consistent with U.S.S.G. § 1B1.13—does **not** apply to motions brought by the *defendant*. *Jones*, 980 F.3d at 1109 (emphasis added) (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)); *Elias*, 984 F.3d at 519 (noting the Sixth Circuit's holding is consistent with the Second, Fourth, and Seventh Circuits, as well as the majority of district courts).

"The district court has substantial discretion" in deciding a motion for compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) ("The statute says that the district court 'may' reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so").

4

Defendant bears the burden of showing that he is entitled to compassionate release. *See*, *e.g.*, *United States v. Kannell*, No. 20-12635, 2021 WL 223485, at *1 (11th Cir. Jan. 22, 2021) ("The movant bears the burden of proving entitlement to relief under section 3582"); *United States v. Melgarejo*, 830 F. App'x 776, 778 (7th Cir. 2020) ("[the defendant] did not meet his burden of demonstrating that his circumstances were extraordinary and compelling"); *cf. United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (holding that the defendant bears the burden to show he is entitled to reduction of sentence under 18 U.S.C. § 3582(c)(2)).

### III. ANALYSIS

Here, because Defendant has brought the pending motion for compassionate release, the Court must undertake the first and third steps of the § 3582(c)(1)(A) inquiry only. *See Jones*, 980 F.3d at 1109. Accordingly, the Court will consider whether "extraordinary and compelling reasons" warrant a reduction in Defendant's sentence and, if so, whether such a reduction is warranted in light of the relevant § 3553(a) factors.

**A. Extraordinary and Compelling Circumstances**

First, the Court must find that "extraordinary and compelling reasons warrant [the sentencing] reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The statute does not define the term "extraordinary and compelling reasons," and Congress delegated the task to United States Sentencing Commission. *See Ruffin*, 978 F.3d at 1004. However, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges … have full discretion to define 'extraordinary and

5

compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111 (emphasis added).

Here, Defendant asserts that the presence of COVID-19, coupled with his underlying medical conditions, compels his compassionate release. Specifically, Defendant asserts that he currently suffers from asthma, hyperthyroidism, high cholesterol, and that diabetes "[r]uns in [his] [f]amily." (Doc. 31 at 10).[3] After the Government responded to and rebutted the arguments regarding Defendant's medical conditions (Doc. 35), appointed defense counsel sought to add obesity as an additional condition. (Doc. 36).

As an initial matter, neither hyperthyroidism or hypothyroidism, nor high cholesterol are among the underlying medical conditions that the Centers for Disease Control and Prevention ("the CDC") identifies as causing or potentially causing increased risk of severe illness from COVID-19. People with Certain Medical Conditions, CDC, *available at*: //www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 18, 2021). Additionally, while the CDC's list does include diabetes, Defendant is not diabetic. Indeed, Defendant indicates merely a family history of diabetes. (Doc. 31 at 10). And Defendant's BOP medical records, dated most recently on March 31, 2020, do not include diabetes as one of Defendant's current medical conditions. (*Id*. at 71-74).

---

[3] Notably, Defendant's medical records indicate a diagnosis of hypothyroidism, not hyperthyroidism. (Doc. 31 at 17). However, as the Court will explain, the distinction makes no difference to the analysis.

6

Additionally, while the CDC lists "Asthma (moderate-to-severe)" as an underlying condition that might increase the risk of severe COVID-19-related illness, Defendant's medical records from March 11, 2020 indicate that Defendant's asthma is diagnosed as "Mild Intermittent." (*Id*. at 21). Indeed, Defendant indicated to medical staff in March 2020 that his last asthma attack occurred approximately two months prior. (*Id*. at 20). And Defendant was accordingly prescribed an inhaler, with the express direction not to use it daily, but only as needed to prevent or relieve an asthma attack. (*Id*. at 21). Because Defendant's asthma is not "moderate-to-severe," it does not fall within the CDC's list of high-risk underlying conditions.

Finally, the CDC lists obesity as an as underlying condition that increases the risk of severe COVID-19-related illness. Here, Defendant's PSR indicates that Defendant stands at 5'8" and 200 lbs.; however, as of March 2020, the BOP records indicate that Defendant has gained an additional 19 lbs. and now weighs 219 lbs. (PSR at ¶ 60; Doc. 31 at 20). Based on the CDC's body mass index calculator, Defendant does narrowly qualify as "obese." Adult BMI Calculator, CDC, *available at*: cdc.gov/healthyweight/ assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html. Notably, however, the CDC explains that increased BMI could result from "increased muscularity rather than increased body fatness [(obesity)]." *Id*. And, indeed, Defendant's medical records indicate no concern for Defendant's weight, but do include numerous mentions of Defendant's activity and exercise regime. (*See*, *e.g.*, Doc. 31 at 24, 27) (referencing Defendant's "daily exercise"; stating Defendant "[i]s very active," but shoulder pain has

7

caused "[t]rouble with jumping jacks, pull ups"). Thus, it is at least plausible to conclude that Defendant's BMI may not in fact reflect actual obesity.

Regardless, even assuming Defendant is obese, that one factor alone does not rise to the level of an "extraordinary and compelling reason" to grant compassionate release. Indeed, as of 2018, over 42% of adult Americans were considered obese and nearly 10% were considered severely obese. Prevalence of Obesity and Severe Obesity Among Adults: United States, 2017–2018, CDC, *available at*: www.cdc.gov/nchs/products/databriefs/db360.htm. Thus, as an underlying condition, obesity alone is hardly "extraordinary" among adults in the United States. Moreover, Defendant's narrow qualification as "obese" is likewise not "extraordinary and compelling."

Defense counsel makes the additional argument that "certain ethnicities appear to be impacted by COVID-19 more than others," and that Defendant "is an African American male which makes him a member of a high risk ethnicity." (Doc. 36 at 4). The Court certainly agrees that the COVID-19 pandemic has disproportionately impacted persons of color and minority communities. However, the reasons underlying this disproportionate impact are relevant to the Court's instant analysis.

Specifically, "[r]ace and ethnicity are risk markers for other underlying conditions that affect health, including socioeconomic status, access to health care, and exposure to the virus related to occupation, *e.g.*, frontline, essential, and critical infrastructure workers." Risk for COVID-19 Infection, Hospitalization, and Death By Race/Ethnicity, CDC, available at: cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html. Additionally, "[m]embers of

8

racial and ethnic minority groups are more likely to encounter barriers to getting [health] care, such as a lack of health insurance or not being paid when missing work to get care," and may be more likely to be at high risk due to underlying health conditions. Why are people of color more at risk of coronavirus complications?, Mayo Clinic, *available at*: mayoclinic.org/ diseases-conditions/coronavirus/expert-answers/coronavirus-infection-by-race/faq-20488802.  Otherwise, "there's no evidence that people of color have genetic or other biological factors that make them more likely to be affected by COVID-19." *Id*.

In short, the disproportionate impact of COVID-19 on racial and ethnic minorities results from a heightened risk of exposure due to the circumstances within the community.  Conversely, in determining whether compassionate release is appropriate, the Court looks at the individualized risk to each specific defendant under the conditions of his or her detention.  And in that regard, Defendant has failed to evidence that he suffers from underlying health conditions that warrant finding "extraordinary and compelling reasons" for his release.

Moreover, the BOP has undertaken considerable steps to ensuring the safety of inmates and staff, and has further begun the process of vaccinating inmates.  Specifically, Defendant's current facility of designation—*FCI Morgantown*—reports only **one confirmed active case of COVID-19 among inmates**, and six among staff.  COVID-19 Cases, BOP, available at: bop.gov/coronavirus/ (last visited Feb. 22, 2021).[4]  And, as a

---

[4] Among other safeguards, the BOP has implemented staff screening tools, which include temperature and symptom checks.  Staff members who arrive at work with a temperature or who exhibit symptoms are denied access into the BOP facility.  *See* COVID-19 Staff Screening Tool, BOP, *available at*: bop.gov/coronavirus/docs/covid19_staff_screening_tool_v2.8_20200327.pdf.

9

result of the BOP's initial distribution of vaccinations, to date, FCI Morgantown has fully inoculated 87 staff members and 12 inmates.  COVID-19 Vaccine Implementation, BOP, *available at*: bop.gov/coronavirus/ (last visited Feb. 18, 2021).

Accordingly, Defendant has not met his burden to evidence extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

### B.  18 U.S.C. § 3553(a) Factors

If the Court finds that "extraordinary and compelling reasons" warrant reduction of the sentence, the Court must still "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [the prior step(s)] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *United States v. Dillon*, 560 U.S. 817, 827 (2010)).

Here, the Court does not find that "extraordinary and compelling reasons" warrant a reduction in Defendant's sentence.  And the Court may deny the motion on that finding alone.  *See Elias*, 984 F.3d at 519 ("[D]istrict courts may deny compassionate-release motions when any of the [required] prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others") (citing *Jones*, 980 F.3d at 1108; *Ruffin*, 978 F.3d at 1006).  However, even assuming *arguendo* that "extraordinary and compelling reasons" exist, the Court nevertheless finds that reduction is not warranted based upon the Court's consideration of all applicable § 3553(a) factors.

Specifically, "the nature and circumstances" of Defendant's offense weigh against relief.  18 U.S.C. § 3553(a)(1).  Defendant was convicted of possession with intent to distribute controlled substances, and was found to be responsible for a total of 59.35

10

grams of heroin and 44.02 grams of cocaine. (PSR at ¶ 20). Moreover, during a search of Defendant's residence, law enforcement found drug trafficking paraphernalia including plastic baggies, a drug press, grinders, a blender and a Pyrex dish with drug residue. (*Id*. at ¶ 14). In addition, officers seized almost $7,000.00 in United States Currency from Defendant's home and person, which monies were consistent with Defendant's drug trafficking operation. In short, Defendant was engaged in significant drug trafficking operations. Thus, the nature and circumstances of the offense weigh against release.

Additionally, Defendant's "history and characteristics" likewise do not support release. 18 U.S.C. § 3553(a)(1). Defendant's juvenile and adult criminal history includes numerous drug trafficking and firearms offenses, tampering with evidence, and a juvenile conviction for aggravated assault. (PSR at ¶¶ 36-44). And Defendant committed the instant offense while under post-release control for a state court charge of drug trafficking. (*Id*. at ¶¶ 43, 48). Additionally, based on Defendant's two prior qualifying convictions for drug trafficking, one of which involved a firearm, Defendant was deemed a career offender under the United States Sentencing Guidelines. (*Id*. at ¶¶ 29-31).

Finally, Defendant's history and characteristics demonstrate that he has engaged in drug trafficking for most of his adult life, has a history of possessing firearms, is undeterred by shorter sentences, and that he poses a danger to the safety of the community. Therefore, the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and to protect the public, similarly cut against Defendant's early release. 18 U.S.C. § 3553(a)(2).

In considering all of the 18 U.S.C. § 3553(a) factors at the time of sentencing, this Court sentenced Defendant to a term of 102 months imprisonment. To date, Defendant has served approximately 53 months. And the Court, having now reconsidered all 18 U.S.C. § 3553(a) factors, finds that reduction of Defendant's sentence would fail to fully address the purposes of sentencing.

### IV. CONCLUSION

Based upon the foregoing, Defendant's motion for compassionate release (Doc. 31) is **DENIED**.

**IT IS SO ORDERED.**

Date: 2/22/2021

Timothy S. Black
United States District Judge

12